CARUTHERS, J.,
delivered the opinion of the Court.
This case comes up by an appeal from a decree of the Chancellor, sustaining a demurrer to the bill.
The object of the bill is to protect a slave, for the price of which the complainants are sureties, from execution creditors of the purchaser, upon the ground that by the decree of the court under which he was sold, a lien was reserved, and the purchaser has become insolvent without discharging the note for the consideration.
The facts, as stated in the bill, are, that at the March Term, 1855, of the Chancery Court for Madison county, a decree was made upon the petition of Thomas Ingram, as administrator of John Ingram, deceased, against the distributees, to sell, among other property, a negro woman named Susan, who was struck off to defendant, Drake, at $501, for which he executed his note at twelve months credit, with the complainants as his sureties; that a lien was retained by the decree upon the slave for the payment of the purchase money: that the note has not been paid, and that, although the sale was confirmed at February Term, 1857, yet no title has yet been vested, by decree, in the purchaser, Drake. That Drake is utterly insolvent, and they will have the money to pay, unless the slave is held liable under the lien reserved. It is further stated that defendant, Compton, who is a constable of Madison county, has levied *551 •sundry executions, in his hands against Drake, upon the slave, Susan, and has taken possession of her, and appointed a day for her sale by public advertisement. The prayer is for the sale of the slave for .the payment of the note in -which they are bound as sureties, and for an injunction and attachment.
There would be no doubt but that this bill would !be entertained, if the complainants had paid up the purchase money, and thereby raised an equity to be substituted to the rights of the creditor, .(McNairy v. Eastland, 10 Yer., 310; Meigs, 172; 1 Story’s Eq., 502,) and just as little that no such right would exist, even if the money had been paid by them, but for the lien •retained in the decree. But the question here is, whether, ■when the money has not been paid by the sureties, they ■can claim the benefit of the lien reserved. We have no decision upon this precise point, and can only be guided by principle. The vendor has no lien upon slaves, or other personalty, as upon land, for the security of the purchase money. When the sale is made, either by the owner himself, or by a Court, the right to the property passes, unincumbered, to the purchaser. It can only be held liable for the consideration, in the former case, by express contract, by mortgage, or reservation of the title; or in the latter, by a provision in the decree. This last mode is in the nature of, and equivalent to, the former. It binds the property, and limits the rights and power of the vendee over it, until the price is paid, for the benefit and security of the vendor. But the question here is, have the sureties of the vendee a right to enforce or compel an • observance of that lien for *552 their benefit; or, in other words, to he substituted to the rights of the creditor in regard to the property before they have discharged the debt.
The case of Green v. Crockett, 2 Dev. and Bat., 390, is upon this doctrine, and commends itself to our approval by its reason and justice. The rule in equity,, which has ripened into a maxim, that sureties are entitled to the benefit of all securities which the creditor obtains against the principal debtor, is there extended to a case where the debt has not been paid, but the principal has become insolvent. That was a case .of land- sold under a decree of Court where the title' was retained until the purchase money should be paid. It is there held, that, as the principal debtor had become insolvent,- the sureties, by virtue of their liability to suffer, had “'a' right, before paying the debt, to file their bill to restrain the conveyance of the land, and1’ have it applied to their relief.” Bunting v. Ricks, in the same volume, page 130, and Williams v. Helme, 1 Dev. Eq., 151, are cited as accordant decisions.
Without looking further, we approve the principle of these cases, and adopt it. There can be no difference in the equity of the sureties, between a case of real estate and that of slaves with a lien, or the title ex-^ pressly reserved by the decree for the sale.
The property is bound for the debt to the creditor,, and when the principal debtor, or purchaser, becomes insolvent, his sureties have an interest in it, so- far as to be authorized to compel its application to their discharge and exoneration, in preference to the general creditors of their principal, or purchasers from him.
*553 We think, then, upon these principles, that the hill should have been entertained, and the prayer granted. The decree sustaining the demurrer will be reversed, and the case reminded for answei’s.